[No. 19497.   Department One.—July 22, 1895.]

SECURITY LOAN AND TRUST COMPANY, Appellant, *v.* JULES KAUFFMAN et al., Defendants; AMANDA FISHER McCALLISTER, Intervenor, Respondent.

Homestead—Modes and Incidents Statutory.—The mode in which a homestead is to be created, as well as the legal incidents which attach to its existence, are purely statutory.

Id.—Declaration by Head of Family—Rights of Wife not Named.— A declaration of homestead by one who declares that he is the head of the family, and that his family consists of himself and four minor children, and following the statute in other respects, is sufficient to impress the land with the incidents of a homestead, including exemption from forced sale, and if the husband is in fact a married man, and the property upon which the homestead is declared is community property, the husband cannot make a valid mortgage upon the homestead which is not executed by both husband and wife.

Id.—Contents of Declaration—Membership of Family.—A statement by the declarant of a homestead that he is the head of the family is a statement of the ultimate fact required by the statute, and he is not required to state in the declaration whether he is married or who are the members of his family, and the statement or omission of those facts does not impair the sufficiency of the declaration, or prevent its inurement to the benefit of his wife.

Id.—Insanity of Wife.—The fact that the wife is insane cannot deprive her of the benefits of the homestead, or give to the husband any greater interest in the estate, or authorize him to encumber it, except in the mode provided by statute.

Id.—Effect of Declaration—Notice of Rights.—The filing of a declaration of homestead for record is a notice to all who may thereafter deal with the property that, if the declarant is a married person, the homestead cannot be conveyed or encumbered unless the instrument is executed or acknowledged by both husband and wife, and the record of the declaration is a sufficient notice to all persons to put them upon inquiry as to the rights of the wife, and, if they fail to make such inquiry, the loss should fall on them rather than on the wife.

Id.—Execution of Mortgage by Woman Falsely Described as Wife —Wife not Estopped.—No statement or act of the husband alone can obviate the necessity of the wife uniting in the instrument of conveyance or encumbrance of the homestead, or deprive her of her estate in the community property upon which it is declared; and the fact that the husband procures another woman who is described as his wife to unite with him in the execution of the mortgage, cannot serve as a protection against the claim of the wife, or estop her from denying the validity of the mortgage.

Foreclosure of Mortgage—Creation of New County—Jurisdiction. The constitution only requires actions for the enforcement of liens to be commenced in the county in which the real estate or some portion thereof is situated, and, where a new county is created after the commencement of the action in which the property affected by the lien is situated, the change of the place of trial is not an element going to the jurisdiction of the court, but is a matter of legislative regulation, and is to be determined by the terms of the act providing for the organization of the new county.

Id.—Mortgage on Homestead—Intervention by Insane Wife—Guardian ad Litem—Power of Court.—In an action to foreclose a mortgage upon the homestead, an insane wife who has an interest in the matter in litigation, and in the success of the husband who pleads the homestead, may be permitted by the court to intervene as a party to the action, and must appear either by general guardian or by guardian *ad litem;* and the court has the same authority to appoint a guardian *ad litem* for her before the filing of her complaint, that it has to appoint a guardian *ad litem* for an infant plaintiff before an action is commenced.

Id.—Appointment of Guardian ad Litem—Pleading—Proof of Insanity—Review upon Appeal.—The appointment of a guardian *ad litem* for an insane person who intervenes in the action is a traversable fact, which must be alleged in the complaint in intervention; and, where there is no record of the evidence of insanity upon which the appointment is made, no objection to the competency or sufficiency of the proof of insanity to justify the appointment can be considered upon appeal.

Id.—Judgment against Husband.—In an action to foreclose a mortgage on a homestead to secure a note executed by the husband a judgment that the plaintiff take nothing by his action is not proper, but the plaintiff is entitled to judgment upon the note against the husband, if the execution of the note is not denied by him.

APPEAL from a judgment of the Superior Court of San Diego County. W. L. PIERCE, Judge.

The facts are stated in the opinion of the court.

*Jefferson Chandler*, and *Shirley C. Ward*, for Appellant.

The declaration of homestead relied upon in this case is insufficient to constitute the homestead thereby created "the homestead of a married person." (Civ. Code, secs. 1241–43, 1261–63; *Barber* v. *Babel*, 36 Cal. 17; Hermann on Estoppel, secs. 1040, 1049, 1050; 9 Am. & Eng. Ency. of Law, 836; Mechem on Agency, sec. 1; *Drais* v. *Hogan*, 50 Cal. 121; Hermann on Estoppel, secs. 1071, 1075, 1077, 1105; *Reis* v. *Lawrence*, 63 Cal. 129; 49 Am. Rep. 83; *Hand* v. *Hand*, 68 Cal. 135; 58 Am. Rep. 5; Webster's Dictionary for the word "show"; Endlich on Interpretation of Statutes, secs. 23, 113, 258, 378, 380, 381; *Hyatt* v. *Allen*, 54 Cal. 356; *Taylor* v. *Delancey*, 2 Caines' Cas. 150; *Yates' case*, 4 Johns, 359; Bigelow on Estoppel, 5th ed., 332; Broom's Legal Maxims, 130; *Chaquette* v. *Ortet*, 60 Cal. 600; *Trawick* v. *Harris*, 8 Tex. 312; *Earle* v. *Earle*, 9 Tex. 630; *Sears* v. *Sears*, 45 Tex. 557; *Wickersham* v. *Comerford*, 96 Cal. 438; *Babb* v. *Carroll*, 21 Tex. 765; *Newland* v. *Holland*, 45 Tex. 590; Wells on Res Adjudicata and Stare Decisis, sec. 598.) The lower court had no jurisdiction to try the cause. (Code Civ. Proc., secs. 392, 393, 396, 399; Act of March 11, 1893, secs. 1, 2, 12, 16; Stats. 1893, p. 159; *Urton* v. *Woolsey*, 87 Cal. 38; *Fritts* v. *Camp*, 94 Cal. 393–98; *Pacific Yacht Club* v. *Sausalito Bay Water Co.*, 98 Cal. 487; Const., art. VI, sec. 5; *Kelly* v. *Tate*, 43 Ga. 535.) The court had no jurisdiction to appoint in this action a guardian *ad litem* for Amanda Fisher McCallister, nor to entertain an intervention on her behalf. (Code Civ. Proc., secs. 372, 373, 1763, 1764, 1878, 1881; 11 Am. & Eng. Ency. of Law, 114, note 4, 158; *Cauffman* v. *Long*, 82 Pa. St. 72; *Campbell* v. *Campbell*, 39 Ala. 312; Civ. Code, sec. 258; *Boyd* v. *Dodson*, 66 Cal. 360.) The lower court erred in not giving plain-

tiff a money judgment for the amount due from defendants Ezra and Mary McCallister.

*Daney & Wright*, for Respondent.

The declaration of homestead was valid. (*Jones v. Waddy*, 66 Cal. 457; Civ. Code, secs. 1237–69, 2295, 2307, 3510, 3537; Waples on Homesteads- and Exemptions, 30, 63, 393, 719, 382; *Charless v. Lamberson*, 1 Iowa, 439; 63 Am. Dec. 457; *Phillips v. Bishop*, 31 Neb. 863; *Pioche v. Paul*, 22 Cal. 110; Fearne on Contingent Remainders, 264; *Smith v. McDonald*, 42 Cal. 488; *Walker v. Sioux City etc. Co.*, 65 Iowa, 563; *Reed v. McCourt*, 41 N. Y. 435; *Wood v. Lord*, 51 N. H. 448; *Morris v. Sargent*, 18 Iowa, 90; *Abbott v. Cromartie*, 72 N. C. 292; 21 Am. Rep. 257; *Parks v. Connecticut etc. Ins. Co.*, 26 Mo. App. 511; *Barber v. Babel*, 36 Cal. 14; *Flege v. Garvey*, 47 Cal. 375; *Gagliardo v. Dumont*, 54 Cal. 499; *Porter v. Chapman*, 65 Cal. 365; *Tipton v. Martin*, 71 Cal. 325; *Burkett v. Burkett*, 78 Cal. 313; 12 Am. St. Rep. 58; *Gleason v. Spray*, 81 Cal. 220; 15 Am. St. Rep. 47; *Lubbock v. McMann*, 82 Cal. 229; 16 Am. St. Rep. 108; *Vallejo v. Randall*, 5 Cal. 462; *Watts v. White*, 13 Cal. 324; *Pearkes v. Freer*, 9 Cal. 642; *Jones v. Frost*, 28 Cal. 246; *O'Neil v. O'Neil*, 54 Cal. 188; *Gurnee v. Superior Court*, 58 Cal. 88; *San Francisco Sav. Union v. Abbott*, 59 Cal. 400; *Watt v. Wright*, 66 Cal. 204; *Richards v. Greene*, 78 Ill. 525; Pomeroy's Code Remedies, sec. 411; Code Civ. Proc., secs. 4, 17, 372, 373, 387, 475, 670, 1881; *Gay v. Brierfield Coal etc. Co.*, 94 Ala. 303; 33 Am. St. Rep. 122; *Board of Commrs. etc. v. Board of Commrs.*, 2 Col. App. 412; *Fellows v. Niver*, 18 Wend. 563; *Crawford v. Neal*, 56 Cal. 321; *Hulbert v. Young*, 13 How. Pr. 414; *Grantman v. Thrall*, 44 Barb. 173; *Emeric v. Alvarado*, 64 Cal. 529; *Mason v. Mason*, 140 Mass. 63; *Merriam v. Boston etc. R. R. Co.*, 117 Mass. 241; *James v. Wilder*, 25 Minn. 305; *Shevlin v. Whelen*, 41 Wis. 88; Thompson on Homesteads and Exemptions, secs. 73–76; Code Civ. Proc., 1474; Pen. Code, sec. 674; Stats. 1873–74, p. 582: Stats. 1889, pp. 330, 331.) The right of appellant to have this

action tried in Riverside county is not jurisdictional, and this court did not lose jurisdiction of this action on the passage of the law creating Riverside county. (Const., art. VI., sec. 5; *Hancock* v. *Burton*, 61 Cal. 70; Code Civ. Proc., secs. 392, 393; *Fletcher* v. *Stowell*, 17 Col. 94; *State* v. *Snyder*, 66 Tex. 687; *Fairbanks* v. *Blum*, 2 Tex. Civ. App. 479; *De la Vega* v. *League*, 64 Tex. 205.) The point made by appellant, that the court should have rendered a personal judgment against Ezra McCallister and Mary McCallister on the note, does not legally concern Amanda Fisher McCallister, the intervenor. (Elliott's Appellate Procedure, sec. 567.)

HARRISON, J.—The plaintiff seeks by this action to foreclose a mortgage purporting to have been executed to it by the defendants, Ezra McCallister and Mary McCallister, "his wife." The execution of the mortgage and note was not denied by either of these defendants. The defendant Ezra, in his answer, alleged that his co-defendant Mary was not his wife; that he was married in February, 1867, to one Amanda Fisher, and that she had ever since that date been his lawful wife; that on June 5, 1883, he was residing with his family on the premises described in the mortgage, and on that day made and filed with the county recorder a declaration in which he claimed the said premises as his homestead; that the land was community property of himself and his said wife Amanda; that the homestead had never been abandoned, and that the said Amanda did not join in the execution of the mortgage, and that she was a necessary party to the action. A guardian *ad litem* was appointed by the court for Amanda upon the ground that she was insane and incompetent, and, by leave of the court, a complaint in intervention was filed on her behalf, in which the same facts were alleged as were alleged in the answer of Ezra. Upon the trial of the cause the court found in accordance with the allegations of this answer, and rendered judgment in favor of the intervenor. The plaintiff has appealed.

1. The declaration of homestead filed by the defendant, Ezra McCallister, was as follows:

"*Know all men by these presents:* That I do hereby certify and declare that I am the head of a family, and that I do now at the time of making this declaration actually reside with my family on the land and premises hereinafter described [here follows a description]; that my family consists of myself and my four minor children, to wit: Lawrence McCallister, aged eleven years; Annie, aged fourteen years; Eliza, aged twelve years, and Rhoda, aged six years. That it is my intention to use and claim the said lot of land and premises above described, together with the dwelling-house thereon and its appurtenances, as a homestead, and I do hereby select and claim the same as a homestead; that the actual cash value of said property I estimate to be two thousand dollars." It is contended on behalf of the appellant that, inasmuch as he failed to state in the declaration that he was a married man, he is precluded from claiming the privileges incident to the homestead of a married man, and that the homestead must be considered as that of an " other person," provided for in chapter III of the title in the Civil Code relating to homesteads.

The mode in which a homestead is to be created, as well as the legal incidents which attach to its existence, are purely statutory. Section 1260 of the Civil Code declares that a homestead, not exceeding five thousand dollars in value, may be selected and claimed " by any head of a family," and in section 1261 the phrase "head of a family" is declared to include the husband when the claimant is a married person. The homestead authorized by chapter III is for any person "other than the head of a family." Section 1262 of the Civil Code declares that the husband, *or* other head of a family, must execute and file with the recorder a declaration, which by section 1263 must contain "a statement showing that the person making it is the head of a family." In *Jones* v. *Waddy,* 66 Cal. 457, it was held that a statement by the declarant that he is the head of a family is

a statement of the ultimate fact required by this section, and is sufficient. It must be held, therefore, that the above declaration was sufficient to impress the land with the incidents of a homestead. McCallister was the head of a family, and so stated in his declaration, and he was also the husband of a living wife, and the property selected was the community property of himself and his said wife. As he was not required to state in his declaration whether he was married or who were the members of his family, the statement or omission of those facts did not impair the sufficiency of the declaration, or prevent its inurement to the benefit of his wife. By filing the declaration for record, the land therein described was impressed with all the legal incidents which the statute gives to a homestead, one of which is an exemption from forced sale. (Civ. Code, sec. 1240.) The exception to this exemption which is provided in section 1241 has no application to the present case, for the reason that the mortgage set forth in the complaint was not executed " by the husband and wife," nor was McCallister at the time of its execution " an unmarried claimant." A declaration of homestead properly executed and acknowledged by a married man, when filed for record, immediately inures to the benefit of his wife, whether she is ignorant thereof or is fully acquainted with the transaction; nor does the fact that she is insane deprive her of its benefits, or give to the husband any greater interest in the estate, or authorize him to encumber it, except in the mode prescribed by statute. (Stats. 1873–74, p. 582.) The filing of the declaration for record is a notice to all who may thereafter deal with the property that, if the declarant is a married person, the homestead cannot be conveyed or encumbered "unless the instrument by which it is conveyed or encumbered is executed or acknowledged by both husband and wife." (Civ. Code, sec. 1242.) Whether the declarant is a married person or not is a question of fact which must be determined by whoever would take a conveyance or encumbrance of the property; and no statement

or act of the husband alone can obviate the necessity of the wife uniting in the instrument of conveyance or encumbrance, or deprive her of her estate in the property. The record of the declaration is a sufficient notice to all persons to put them upon inquiry; and, if they fail to make such inquiry or to take such steps as will protect them in their dealings with the husband, the loss should fall on them rather than on the wife, who has in no respect contributed thereto.

Inasmuch as the plaintiff procured Mary McCallister, who is described as the wife of Ezra, to unite with him in the execution of the mortgage, it cannot contend that it relied upon the recorded declaration as affording a presumption that McCallister was unmarried. The representations by McCallister that she was his wife, whether such representations were by direct statement, or the presumption arising from their having lived together as husband and wife, were but self-serving declarations and representations on his part, and could not in any respect bind or affect the respondent. Whether Mary was, in fact, the wife of Ezra, or whether she personated his wife, was to be determined by the plaintiff at its risk, and its reliance upon any statements or information to that effect given by Ezra cannot serve as a protection against the claim of Amanda, or be a substitute for the truth. Whether Ezra would be estopped from denying the validity of the mortgage, if he alone were affected, need not be considered. (See, however, *Gagliardo* v. *Dumont,* 54 Cal. 499.) It is very clear that Amanda is not estopped from asserting the invalidity of the mortgage by any act of her husband, or from claiming to be his wife, by the fact that he has recognized another woman as such.

2. At the time the action was commenced the land described in the complaint was situate in the county of San Diego, and the action was commenced in the superior court of that county, and was tried in that court January 11, 1894. Subsequent to the commencement of the action the county of Riverside was organ-

ized under an act of the legislature, approved March 11, 1893 (Stats. 1893, p. 158), and the land is included within the boundaries of that county.   After the cause had been submitted to the court, and the court had orally announced its decision, the plaintiff moved the court to transfer the cause to Riverside county for trial, upon the ground that by the organization of that county the superior court of San Diego county had lost jurisdiction to proceed further in the case.

The constitution, article VI, section 5, declares that, "All actions for the enforcement of liens" shall be *commenced* in the county in which the real estate or some portion thereof is situated; and at the time this action was "commenced" the property was situate within the boundaries of San Diego.   The constitution does not, however, require that the action shall be "tried" in the county in which the property is situated, and the statutory provision in section 392 of the Code of Civil Procedure, that actions "for the foreclosure of liens and mortgages on real property" must be tried in the county in which the subject of the action, or some part thereof, is situated, "subject to the power of the court to change the place of trial," shows that "the place of trial" is not an element going to the jurisdiction of the court, but is a matter of legislative regulation.   The provision for the transfer of certain actions to the superior court of the county of Riverside, which is contained in section 12 of the act providing for the organization of that county, shows the extent of this regulation which the legislature deemed necessary, and implies that only the actions there designated were to be transferred for trial.

3. There was no error in the appointment of a guardian *ad litem* for Amanda Fisher McCallister.   She had an interest in the matter in litigation, and also an interest in the success of the defendant, Ezra McCallister. The court was therefore authorized, by section 387 of the Code of Civil Procedure, to permit her to become a party to the action.   Having been thus permitted to become a party to the action, and being insane, she

could appear only by a general guardian or a guardian *ad litem.* The court had the same authority to appoint a guardian *ad litem* for her before the filing of her complaint in an intervention that it has to appoint a guardian *ad litem* for an infant plaintiff before the action is commenced. As this appointment is a traversable fact which must be alleged in the complaint (*Crawford* v. *Neal*, 56 Cal. 321), it follows that it must be made before the complaint is filed. The objection to the competency or sufficiency of the proof of her insanity cannot be considered, as there is no record before us of the evidence upon which the original appointment was made. The evidence at the trial was sufficient to justify the court in finding that she was insane.

4. That portion of the judgment "that the plaintiff take nothing by this action" is not sustained by the other portions of the record. The defendant, Ezra McCallister, did not deny the execution of the note set forth in the complaint, and the plaintiff is entitled to a judgment thereon against him.

The judgment in favor of the intervenor, Amanda Fisher McCallister, and the order denying a new trial as to her, are affirmed. That portion of the judgment that the plaintiff take nothing by this action is reversed, so far as the same applies to the defendant, Ezra McCallister, and the superior court is directed to enter a judgment against him upon the promissory note set forth in the complaint. The costs of this appeal will be taxed against Ezra McCallister.

Garoutte, J., and Van Fleet, J., concurred.